Vik Pawar, Esq.
**PAWAR LAW GROUP P.C.**
6 South Street, Suite 201
Morristown, New Jersey 07960
Telephone: (212) 571-0805
Facsimile: (212) 571-0938
Email: vikrantpawaresq@gmail.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARISTINE RECHT, DERIVATIVELY ON BEHALF OF ALLIANCE MMA, INC., | ) ) Case No. |
| | ) |
| Plaintiff, | ) **VERIFIED SHAREHOLDER** ) **DERIVATIVE COMPLAINT FOR:** |
| | ) |
| v. | ) **(1) BREACH OF FIDUCIARY DUTY;** ) **(2) UNJUST ENRICHMENT;** |
| PAUL K. DANNER, III, JOHN PRICE, JOSEPH GAMBERALE, RENZO GRACIE, MARK D. SHEFTS, JOEL D. TRACY, and BURT A. WATSON, | ) **(3) ABUSE OF CONTROL;** ) **(4) GROSS MISMANAGEMENT;** ) **AND** ) **(5) WASTE OF CORPORATE ASSETS** ) |
| Defendants, | ) **JURY TRIAL DEMANDED** ) |
| And | ) ) |
| ALLIANCE MMA, INC., | ) ) |
| Nominal Defendant. | ) ) ) ) ) ) ) ) ) |

Plaintiff Aristine Recht ("Plaintiff"), by her undersigned attorneys, derivatively on behalf

of Nominal Defendant Alliance MMA, Inc. ("Alliance" or the "Company"), files this Verified

- 1 -

Shareholder Derivative Complaint against Defendants Paul K. Danner, III, John Price, Joseph Gamberale, Renzo Gracie, Mark D. Shefts, Joel D. Tracy, and Burt A. Watson (collectively, the "Individual Defendants") for breaches of their fiduciary duties as directors and/or officers of Alliance, unjust enrichment, waste of corporate assets, abuse of control, and gross mismanagement.  As for her complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Alliance, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Alliance's directors and officers.

2.      Alliance is a company that was formed in February 2015 for the purpose of acquiring businesses that engage in the promotion of mixed martial arts ("MMA") events.  The Company seeks to establish a feeder organization to MMA promotions around the world, including the sport of MMA's highest levels of professional competition, such as The Ultimate Fighting Championship, World Series of Fighting, and Bellator MMA.

3.     On August 16, 2016, Alliance filed a registration statement on Form S-1 with the SEC for its initial public offering ("IPO"), which was subsequently amended, with the final amended registration statement filed on August 30, 2016 on Form S-1/A with the SEC (the "Registration Statement").   On September 2, 2016, the Registration Statement was declared effective by the SEC.

4.     The Registration Statement also contained a preliminary prospectus, the final version of which was filed on September 2, 2016.

5.     On September 30, 2016, Alliance acquired the assets and assumed certain liabilities of the promotion companies CFFC Promotions, LLC, Hoosier Fight Club Promotions, LLC, Punch Drunk, Inc., Bang Time Entertainment, LLC, and V3, LLC, and of the MMA events ticketing platform Cagetix LLC.

6.     On or about October 6, 2016, the Company completed its IPO, which raised approximately $14.9 million in net proceeds through the sale of approximately 3.3 million shares at $4.50 per share.

7.     On April 12, 2017, Alliance filed a current report on Form 8-K with the SEC, which revealed that its previously issued consolidated financial statements for the nine months ended September 30, 2016 and the three and six months ended June 30, 2016 should no longer be relied upon and would be restated.  Per the Form 8-K, the consolidated financial statements could not be relied upon because of an error in recognizing as compensation transfers of common stock by an affiliate of the Company to individuals who were at the time of transfer, or subsequently became, officers, directors or consultants of the Company.

8.     On this news, the price per share of Alliance stock fell $0.31, or 12.1%, from its previous day closing price to close at $2.24 on April 13, 2017.

9.     On April 17, 2017, the Company filed an annual report on Form 10-K with the SEC, which provided the Company's restated financial statements for the nine months ended September 30, 2016 and the three and six months ended June 30, 2016, revealing that Alliance suffered a net loss of $2,595,000 for the nine months ended September 30, 2016—in stark contrast to the $819,352 previously and incorrectly reported for the same period.

10.    On this news, the price per share of Alliance stock fell $0.13, or 6.0%, from its previous day closing price to close at $2.03 on August 18, 2017.

11.    The Company issued a press release announcing the filing of its April 17, 2017 Form 10-K the following day on April 18, 2017.

12.    Upon the investing public becoming further aware of the restatements, the price per share of Company stock fell a further $0.22, or 10.8%, from the previous day closing price to close at $1.81 on April 19, 2017.

13.    Between October 6, 2016 to April 18, 2017 (the "Relevant Period"), the investing public was under a false impression of the Company's business, operations, and financial success.

14.    During the Relevant Period, the Individual Defendants, in breach of their fiduciary duties owed to Alliance, willfully or recklessly made and/or caused the Company to make false and/or misleading statements and fail to disclose that its condensed consolidated financial statements for the nine months ended September 30, 2016 and the three and six months ended June 30, 2016 could not be relied upon because of an error in recognizing as compensation transfers of common stock by an affiliate of the Company to individuals who were at the time of transfer, or

- 4 -

subsequently became, officers, directors or consultants of the Company.  As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.  The Individual Defendants failed to correct and/or caused the Company to fail to correct these false and/or misleading statements and/or omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.  Additionally, in breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused the Company to fail to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls over financial reporting.

15.     The Individual Defendants' breaches of fiduciary duty and other misconduct have subjected the Company, the Company's Chief Executive Officer ("CEO") and Chairman of the Board, and the Company's Chief Financial Officer ("CFO") to a federal securities fraud class action lawsuit pending in the United States District Court for the District of New Jersey (the "Securities Fraud Class Action"), the need to undertake internal investigations, losses from the waste of corporate assets, and losses due to the unjust enrichment of Individual Defendants who were improperly over-compensated by the Company, and will likely cost the Company going forward millions of dollars.

16.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

17.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, of the collective engagement in fraud and misconduct by the Company's directors, of the substantial likelihood of the directors' liability in this derivative action and of one of them in the Securities Fraud Class Action, and of their not

being disinterested and/or independent directors, a majority of the Board of Directors ("Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question pertaining to the claims made in the Securities Fraud Class Action based on violations of the Securities Act of 1933.

19.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

20.     Venue is proper in this District because the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

21.     Such business includes that of CFFC Promotions, LLC, which is based in Atlantic City, New Jersey, and which is a company of which Alliance acquired the assets and assumed certain liabilities on September 30, 2016.

## PARTIES

### Plaintiff

22.     Plaintiff is a current shareholder of Alliance common stock. Plaintiff has continuously held Alliance common stock at all relevant times.

### Nominal Defendant Alliance

23.     Nominal Defendant Alliance is a Delaware corporation with its principal executive offices at 590 Madison Avenue, 21st Floor, New York, New York 10022.

24.     Alliance stock trades on The NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "AMMA."

**Defendant Danner**

25.     Defendant Paul K. Danner, III ("Danner") has served as the Company's CEO and Chairman of the Board since May 2016.  According to the Company's annual report on Form 10-K filed with the SEC on April 17, 2017 (the "2016 10-K"), as of April 10, 2017, Defendant Danner beneficially owned 150,000 shares of the Company's common stock, which was approximately 1.66% of the Company's outstanding stock.  Given that the price per share of the Company's common stock at the start of trading on April 10, 2017 was $2.57, Danner beneficially owned $385,500 worth of Alliance stock.

26.     For the fiscal year ended December 31, 2016, Defendant Danner received $566,506 in compensation from the Company, which included $44,423 in base salary, a $102,083 bonus, and $420,000 in stock awards.

27.     The Company's 2016 10-K stated the following about Defendant Danner:

*Paul Danner, III*.[1]

Mr. Danner, 58, is our Chairman of the Board and Chief Executive Officer. Prior to joining the Company in 2016, Mr. Danner served as the Managing Director of Destiny Partners Worldwide, a global organizational management and business operations consultancy, from 2006 to 2016. From 2008 to 2010, Mr. Danner was also the Chief Executive Officer of China Crescent Enterprises, a publicly traded information technologies company headquartered in Shanghai, China. Previously, he served as Chairman and Chief Executive Officer of Paragon Financial Corporation, a publicly traded financial services firm listed on NASDAQ, from 2002 to 2006. From January 1998 to 2001, Mr. Danner was employed in various roles at MyTurn.com, Inc., a NASDAQ listed company, including as Chief Executive Officer. From 1996 to 1997, Mr. Danner was the Managing Partner of Technology Ventures, a consulting firm. From 1985 to 1996 he held executive-

---

[1] Unless otherwise noted, emphasis in original throughout.

level and sales & marketing positions with a number of technology companies including NEC Technologies and Control Data Corporation. Mr. Danner served as a Naval Aviator flying the F-14 Tomcat, and subsequently as an Aerospace Engineering Duty Officer supporting the Naval Air Systems Command, for eight years on active duty plus 22 years with the reserve component of the United States Navy. Mr. Danner retired from the Navy in 2009 with the rank of Captain. Mr. Danner holds a BS in Business Finance from Colorado State University and an MBA from Old Dominion University and has completed curricula at the Naval War College, Defense Acquisition University and the National Defense University. The Board of Directors believes that Mr. Danner is qualified to serve as a director because of his management and leadership experience, particularly in growth stage and roll-up companies, the perspective he brings as our Chief Executive Officer, and his experience as an officer and director of several private and public companies.

## Defendant Price

28.     Defendant John Price ("Price") has served as the Company's CFO since August 2016.  For the fiscal year ended December 31, 2016, Defendant Price received $431,583 as compensation from the Company, which included $67,257 as base salary and $364,326 in option awards.

29.     The Company's 2016 Proxy Statement stated the following about Defendant Price:

*John Price*

Mr. Price, 46, is our Chief Financial Officer. Prior to joining us in 2016, Mr. Price was Chief Financial Officer of MusclePharm Corporation, a publicly-traded nutritional supplement company. Prior to joining MusclePharm in 2013, Mr. Price served as vice president of finance—North America at Opera Software, a Norwegian public company focused on digital advertising. From 2011 to 2013, he served as vice president of finance and corporate controller GCT Semiconductor. From 2004 to 2011, Mr. Price served in various roles at Tessera Technologies including VP of Finance & Corporate Controller. Prior to Tessera Technologies, Mr. Price served various roles at Ernst &Young LLP. Mr. Price served nearly three years in the San Jose, California office and nearly five years in the Pittsburgh, Pennsylvania office. Mr. Price has been a certified public accountant (currently inactive) since 2000 and attended Pennsylvania State University, where he earned a Bachelor's of Science Degree in Accounting.

## Defendant Gamberale

- 8 -

30.     Defendant Joseph Gamberale ("Gamberale") has served as a Company director since February 2015.  He is also the chairman of the Compensation Committee, a member of the Audit Committee, and a member of the Nominating Committee.   According to the Company's 2016 10-K, as of April 10, 2017, Defendant Gamberale beneficially owned 587,433 shares of the Company's common stock, which was approximately 6.51% of the Company's outstanding stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2017 was $2.57, Gamberale owned over $1.5 million worth of Alliance stock.

31.     The Company's 2016 10-K stated the following about Defendant Gamberale:

*Joseph Gamberale*

Mr. Gamberale, 51, has served a director since our formation in February, 2015. Mr. Gamberale serves as the chairman of our compensation committee and a member of our audit and nominating committees. Prior to founding Alliance, Mr. Gamberale was the founder and managing member of Ivy Equity Investors, LLC, a New York-based private investment firm launched in 2014. From 2011 to 2014, Mr. Gamberale was a private investor. In 2001, Mr. Gamberale co-founded Centurion Capital Hedge Fund, a multi-strategy investment firm which he actively managed until his retirement in 2011. From 1996 through 2001, Mr. Gamberale oversaw the Athletes and Entertainers Private Client Group at Merrill Lynch where he advised clients on a wide spectrum of securities and industries, particularly involving roll-up transactions in fragmented businesses. From 1991 to 1996, Mr. Gamberale was a financial advisor at Solomon Smith Barney. Mr. Gamberale is a member of the Central Park Conservatory, Columbus Citizens Foundation, and Grand Havana Room and politically active in supporting numerous charitable organizations. Mr. Gamberale is a graduate of Rutgers University. The Board believes that Mr. Gamberale is qualified to serve as a director because of his extensive experience as an executive in the financial services industry, particularly as such experience relates to roll-up transactions.

**Defendant Gracie**

32.     Defendant Renzo Gracie ("Gracie") has served as a Company director since September 2016.  According to the Company's 2016 10-K, as of April 10, 2017, Defendant Gracie beneficially owned 66,667 shares of the Company's common stock.  Given that the price per share

of the Company's common stock at the close of trading on April 10, 2017 was $2.57, Gracie owned over $171,334 worth of Alliance stock.

33.     For the fiscal year ended December 31, 2016, Defendant Gracie received $286,667 as compensation from the Company, which included $100,000 in fees earned or cash paid and $186,667 in stock awards.

34.     The Company's 2016 10-K stated the following about Defendant Gracie:

*Renzo Gracie*

Mr. Gracie, 48, serves as a director. One of the true martial arts legends, Renzo Gracie is a Jiu-Jitsu black belt from the famous Gracie family. Born in Rio de Janeiro, Brazil, Mr. Gracie is the grandson of Gracie Jiu Jitsu founder Carlos Gracie and son of 9th Dan BJJ black belt Robson Gracie, brother to Ralph and Ryan Gracie. Like most men in the Gracie family, Renzo started training Jiu Jitsu as an infant. He had formal instruction from many of the Gracie patriarchs, but two of his biggest influences were the legendary Rolls Gracie and Carlos Gracie Jr. (the man who later awarded him his black belt). Mr. Gracie has won numerous competitions, the most prestigious being the Abu Dhabi Combat Club (ADCC), in which he is a two-time champion. Mr. Gracie's name is also synonymous with Vale-Tudo, the famous "no holds barred" style of fighting in Brazil that is credited with originating modern MMA. Mr. Gracie has fought all over the world for organizations such as Pride FC and the UFC. Mr. Gracie pioneered Brazilian Jiu-Jitsu in America in the 1990's when he founded Renzo Gracie Academy in New York City, one of the cornerstones of Brazilian Jiu-Jitsu in America. Mr. Gracie is recognized as one of the sports best teachers and mentors. With his signature combination of charisma and intelligence, Mr. Gracie has guided students such as Matt Serra a former UFC Champion, Roger Gracie a ten-times Jiu Jitsu world champion, John Danaher the Jiu-Jitsu Coach to UFC Champions Georges St-Pierre and Chris Weidman, Shawn Williams, and Ricardo Almeida to black belt. The Board believes that Mr. Gracie is qualified to serve as a director because of his substantial experience in the MMA industry.

**Defendant Shefts**

35.     Defendant Mark D. Shefts ("Shefts") has served as a Company director since September 2016.  He is also the chairman of the Audit Committee and a member of the Compensation Committee.  According to the Company's 2016 10-K, as of April 10, 2017,

Defendant Shefts beneficially owned 190,277 shares of the Company's common stock, which was approximately 2.1% of the Company's outstanding stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2017 was $2.57, Shefts owned over $489,011 worth of Alliance stock.

36.     For the fiscal year ended December 31, 2016, Defendant Shefts received $108,888 as compensation from the Company, all in the form of stock awards.

37.     The Company's 2016 10-K stated the following about Defendant Shefts:

*Mark Shefts*

Mr. Shefts, 58, serves as a director and chairman of our audit committee and a member of our compensation committee. Since 2004, Mr. Shefts has served as the Chief Executive Officer of The Rushcap Group, Inc., a privately held investment and consulting firm. Since 2005, Mr. Shefts has served as a Trustee of The Onyx & Breezy Foundation, a non-profit organization. Previously, Mr. Shefts was the Director, President and co-owner of All-Tech Investment Group Inc., from 1987 to 2001, and Domestic Securities, Inc., from 1993 to 2011, each an SEC-registered broker dealer. Mr. Shefts has previously owned seats on both the New York Stock Exchange and the Chicago Stock Exchange. Mr. Shefts has been an arbitrator for the American Arbitration Association and FINRA Dispute Resolution, Inc. with an area of specialization in the field of financial services. Mr. Shefts holds FINRA Series 7, 24 and 63 licenses and a Series 27 qualification as a Financial and Operations Principal. Mr. Shefts is also certified as Financial Services Auditor and a Certified Fraud Examiner. Mr. Shefts has been a Director, EVP & Chief Financial officer of Arbor Entech Corp. and Solar Products Sun-Tank, Inc., each a publicly traded companies. Mr. Shefts holds a BS in accounting from Brooklyn College of The City University of New York. The Board believes that Mr. Shefts is qualified to serve as a director because of his substantial experience as an executive in the financial services industry and his experience as an officer and director of several private and public companies.

**Defendant Tracy**

38.     Defendant Joel D. Tracy ("Tracy") has served as a Company director since September 2016.  He is also a member of the Audit Committee and a member of the Nominating Committee.  According to the Company's 2016 10-K, as of April 10, 2017, Defendant Tracy

- 11 -

beneficially owned 124,702 shares of the Company's common stock, which was approximately 1.3% of the Company's outstanding stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2017 was $2.57, Tracy owned over $320,484 worth of Alliance stock.

39.     For the fiscal year ended December 31, 2016, Defendant Tracy received $46,668 as compensation from the Company, all in the form of stock awards.

40.     The Company's 2016 10-K stated the following about Defendant Tracy:

*Joel D. Tracy*

Mr. Tracy, 55, serves as a director and a member of our audit and nominating committees. Mr. Tracy has been self-employed as a Certified Public Accountant since 1989, specializing in tax and estate planning for high net worth individuals. From 2004 to 2016, Mr. Tracy was the managing member of ABT Realty, LLC, a privately held real estate company. From 2008 to 2016, Mr. Tracy was the managing member of Vista Bridge Associates, LLC, a privately held company lending money for personal injury settlements. Previously, from 1980 to 2000, Mr. Tracy was the President of Auto-Rite Supply Company, Inc., a family owned auto parts store chain. He has been involved in various local and community organizations including the American Institute of Certified Public Accountants and Optimists International, a not-for-profit organization for children. Mr. Tracy holds a Bachelor of Science in Commerce from Rider College, Lawrenceville, New Jersey. The Board of Directors believe that Mr. Tracy is qualified to serve as a director because of his substantial experience as an accountant and financial services professional and his experience as an officer and director of several private and public companies.

**Defendant Watson**

41.     Defendant Burt A. Watson ("Watson") has served as a Company director since September 2016.  According to the Company's 2016 10-K, as of April 10, 2017, Defendant Watson beneficially owned 16,667 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2017 was $2.57, Watson owned over $42,834 worth of Alliance stock.

42.     For the fiscal year ended December 31, 2016, Defendant Watson received $64,668 as compensation from the Company, which included $18,000 in fees earned or cash paid and $46,668 in stock awards.

43.     The Company's 2016 10-K stated the following about Defendant Watson:

*Burt A. Watson*

Mr. Watson, 67, serves as a director. Mr. Watson began his decades long career in boxing and MMA as business manager to the legendary "Smokin" Joe Frazier where he handled all aspects of administrative support from contract negotiations and personal appearances to television interviews and public relations. As one of the industry's most sought after event coordinators, Mr. Watson has worked with boxing greats Muhammad Ali, Larry Holmes, George Foreman, Ken Norton, Mike Tyson and Oscar De La Hoya. As an independent site coordinator Mr. Watson has assisted some of boxing's most notable promoters, including Don King, Lou Duva, Frank Warren Sports of London, and Univision. In 2001, Mr. Watson began his career in MMA when UFC President Dana White recruited Mr. Watson to the UFC. During his tenure at the UFC from 2001 until 2015, Mr. Watson served as event and athlete relations coordinator. With extensive television relations, Mr. Watson has organized championship fights and boxing events on such networks as ESPN, Showtime, HBO, CBS and ABC. The Board believes that Mr. Watson is qualified to serve as a director because of his substantial experience and perspective in the MMA industry.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

44.     By reason of their positions as officers, directors and/or fiduciaries of Alliance and because of their ability to control the business and corporate affairs of Alliance, the Individual Defendants owed Alliance and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Alliance in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Alliance and its shareholders so as to benefit all shareholders equally.

45.     Each director and officer of the Company owes to Alliance and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

46.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Alliance, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

47.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Alliance, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Alliance's Board at all relevant times.

48.     To discharge their duties, the officers and directors of Alliance were required to exercise reasonable and prudent supervision over the management, policies, practices, operations, and internal controls of the Company.  By virtue of such duties, the officers and directors of Alliance were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, New Jersey, the United States, and pursuant to Alliance's own Code of Business Conduct and Ethics and internal guidelines;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Alliance conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Alliance and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Alliance's operations would comply with all laws and Alliance's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)      examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

49.      Each of the Individual Defendants further owed to Alliance and the shareholders the duty of loyalty requiring that each favor Alliance's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

50.      At all times relevant hereto, the Individual Defendants were the agents of each other and of Alliance and were at all times acting within the course and scope of such agency.

51.      Because of their advisory, executive, managerial, and directorial positions with Alliance, each of the Individual Defendants had access to adverse, non-public information about the Company.

52.      The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Alliance.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

53.      In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the true facts as alleged herein.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

- 16 -

54.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, abuse of control, and gross mismanagement; (ii) conceal adverse information concerning the Company's operations, financial condition, competitors, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

55.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to conceal material facts, fail to correct such misrepresentations, fail to maintain adequate internal controls, and violate applicable laws.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.  Because the actions described herein occurred under the authority and approval of the Board, each of the Individual Defendants who are directors of Alliance was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

56.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his overall contribution to and furtherance of the wrongdoing.

57.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Alliance, and was at all times acting within the course and scope of such agency.

## ALLIANCE'S CODE OF ETHICS

58.     Per the Company's Code of Business Conduct and Ethics (the "Code of Ethics"), Alliance adopted the Code of Ethics for directors, executive officers, and employees of the Company and "[e]ach director, executive officer and employee must comply with the letter and spirit of this Code."

59.     The Code of Ethics provides, as to "Maintain Fiduciary Duties," that:

Directors and executive officers must be loyal to the Corporation and must act at all times in the best interest of the Corporation and its shareholders and subordinate self-interest to the corporate and shareholder good. Directors and executive officers should never use their position to make a personal profit. Directors and executive officers must perform their duties in good faith, with sound business judgment and with the care of a prudent person.

60.     The Code of Ethics provides, as to "Conflict of Interest," that:

A "conflict of interest" occurs when the private interest of a director, executive officer or employee interferes in any way, or appears to interfere, with the interests of the Corporation as a whole. Conflicts of interest also arise when a director, executive officer or employee, or a member of his or her family, receives improper personal benefits as a result of his or her position as a director, executive officer or employee of the Corporation. Loans to, or guarantees of the obligations of a director, executive officer or employee or of a member of his or her family, may create conflicts of interest.

Directors and executive officers must avoid conflicts of interest with the Corporation. Any situation that involves, or may reasonably be expected to involve, a conflict of interest with the Corporation must be disclosed immediately to the Chairman of the Board.

This Code does not attempt to describe all possible conflicts of interest that could develop. Some of the more common conflicts from which directors and executive offices must refrain, however, are set out below.

- 18 -

- <u>Relationship of Corporation with third-parties</u>. Directors, executive officers and employees may not engage in any conduct or activities that are inconsistent with the Corporation's best interests or that disrupt or impair the Corporation's relationship with any person or entity with which the Corporation has or proposes to enter into a business or contractual relationship.

- <u>Compensation from non-Corporation sources</u>. Directors, executive officers and employees may not accept compensation, in any form, for services performed for the Corporation from any source other than the Corporation.

- <u>Gifts</u>. Directors, executive officers and employees and members of their families may not offer, give or receive gifts from persons or entities who deal with the Corporation in those cases where any such gift is being made in order to influence the actions of a director as a member of the Board or the actions of an executive officer as an officer of the Corporation, or where acceptance of the gifts would create the appearance of a conflict of interest.

61.     The Code of Ethics provides, as to "Protection and Proper Use of Corporation Assets," that:

Directors, executive officers and employees must protect the Corporation's assets and ensure their efficient use. Theft, loss, misuse, carelessness and waste of assets have a direct impact on the Corporation's profitability. Directors, executive officers and employees must not use Corporation time, employees, supplies, equipment, tools, buildings or other assets for personal benefit without prior authorization from the Chairman of the Audit Committee or as part of a compensation or expense reimbursement program available to all directors or executive officers.

62.     The Code of Ethics provides, as to "Fair Dealing," that:

Directors, executive officers and employees shall deal fairly and directors and executive officers shall oversee fair dealing by employees and officers with the Corporation's directors, officers, employees, customers, suppliers and competitors. No one should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair dealing practices.

63.     The Code of Ethics provides, as to "Compliance with Laws, Rules and Regulations," that:

Directors and executive officers shall comply, and oversee compliance by employees, officers and other directors, with all laws, rules and regulations applicable to the Corporation, including insider-trading laws. Transactions in Corporation securities are to be governed by any Corporation policy relating to insider trading that may be in place.

64.     The Code of Ethics provides, as to "Accuracy of Records," that:

The integrity, reliability and accuracy in all material respects of the Corporation's books, records and financial statements is fundamental to the Corporation's continued and future business success. No director, executive officer or employee may cause the Corporation to enter into a transaction with the intent to document or record it in a deceptive or unlawful manner. In addition, no director, executive officer, or employee may create any false or artificial documentation or book entry for any transaction entered into by the Corporation. Similarly, executive officers and employees who have responsibility for accounting and financial reporting matters have a responsibility to accurately record all funds, assets and transactions on the Corporation's books and records.

65.     The Code of Ethics provides, as to "Quality of Public Disclosures," that:

The Corporation is committed to providing its shareholders with [sic] United States. It is the Corporation's policy that the reports and documents it files with or submits to the Securities and Exchange Commission, and its earnings releases and similar public communications made by the Corporation, include fair, timely and understandable disclosure. Executive officers and employees who are responsible for these filings and disclosures, including the Corporation's principal executive, financial and accounting officers, must use reasonable judgment and perform their responsibilities honestly, ethically and objectively in order to ensure that this disclosure policy is fulfilled. The Corporation's senior management is primarily responsible for monitoring the Corporation's public disclosure.

66.     The Code of Ethics provides, as to "Failure to Comply; Compliance Procedures," that:

A failure by any director or executive officer to comply with the laws or regulations governing the Corporation's business, this Code or any other Corporation policy or requirement may result in disciplinary action, and, if warranted, legal proceedings.

67.     In violation of the Code of Ethics, the Individual Defendants (as key officers and as members of the Company's Board) consciously disregarded their duties to (1) maintain

- 20 -

fiduciary duties, (2) avoid conflicts of interest, (3) protect corporate assets, (4) oversee fair dealing by the Company's officers, (5) comply with laws, rules, and regulations, (6) maintain accurate records, (7) maintain proper quality of public disclosures, and (8) initiate legal proceedings against those who violated the Code of Ethics.

## ALLIANCE'S AUDIT COMMITTEE CHARTER

68.   Pursuant to its Charter, the Audit Committee will "[s]erve as an independent and objective party to monitor the Corporation's financial reporting process and internal control system and complaints or concerns relating thereto."

69.   The Audit Committee Charter additionally states that the Audit Committee has a responsibility to:

- Review the financial statements contained in the annual report and quarterly report to shareholders with management and the independent auditors to determine that the independent auditors are satisfied with the disclosure and content of the financial statements to be presented to the shareholders. Any changes in accounting principles should be reviewed.

* * *

- Review with management of the Corporation any financial information, earnings press releases and earnings guidance filed with the Securities and Exchange Commission or disseminated to the public, including any certification, report, opinion or review rendered by the independent auditors.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### False and Misleading Statements

#### The Registration Statement

70.   On September 2, 2016, the Registration Statement was declared effective by the SEC. The Registration Statement, signed by Defendants Danner, Price, and Gamberale, failed to

disclose that the Company's condensed consolidated financial statements for the three and six months ended June 30, 2016 could not be relied upon because of an error in recognizing as compensation transfers of common stock by an affiliate of the Company to individuals who were at the time of transfer, or subsequently became, officers, directors or consultants of the Company. Thus, the Registration Statement provided Alliance's financial results in various financial statements with false and misleading figures for the three and six months ended June 30, 2016.

71.    The Registration Statement provided the following statement of operations:

### UNAUDITED PRO FORMA STATEMENT OF OPERATIONS
### For the six months ended June 30, 2016
*(In thousands, except share information)*

| | Target Companies - Actual Results | | | | | | | | | | | |
| | Shogun | CageTix | CFFC | GFL | HFC | COGA | V3 Fights | Target Companies Subtotal | Alliance MMA | Total Results | Pro Forma Adjusting Entries | Pro Forma Results |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 302 | 57 | 312 | 277 | 140 | 59 | 77 | 1,224 | - | 1,224 | | $  1,224 |
| Cost of revenues | 204 | - | 229 | 165 | 100 | 26 | 52 | 776 | - | 776 | | 776 |
| Gross profit | 98 | 57 | 83 | 112 | 40 | 33 | 25 | 448 | - | 448 | | 448 |
| Operating expenses | | | | | | | | | | | | |
| General and administrative expenses | 13 | 17 | 47 | 85 | 9 | 13 | 13 | 197 | 42 | 239 | | 239 |
| Professional and consulting fees | 8 | - | 8 | 10 | 8 | 9 | 9 | 52 | 182 | 234 | (142)4(iv) | 92 |
| Depreciation | - | - | 1 | 14 | - | 4 | - | 19 | - | 19 | - | 19 |
| Amortization | - | - | - | - | - | - | - | - | - | - | 707 4(v) | 707 |
| Total operating expenses | 21 | 17 | 56 | 109 | 17 | 26 | 22 | 268 | 224 | 492 | 565 | 1,057 |
| Net income (loss) | 77 | 40 | 27 | 3 | 23 | 7 | 3 | 180 | (224) | (44) | (565) | $  (609) |
| Weighted average common shares outstanding | | | | | | | | | | | | 10,000 |
| Net loss per common share | | | | | | | | | | | | $  (0.0609) |

72.    The Registration statement additionally provided the following balance sheet for the six months ended June 30, 2016:

### UNAUDITED PRO FORMA BALANCE SHEET
#### For the six months ended June 30, 2016
(*In thousands, except share information*)

| | Target Companies - Actual Results | | | | | | | | | | |
| | Shogun | CageTix | CFFC | GFL | HFC | COGA | V3 Fights | Target Companies Subtotal | Actual Alliance MMA | Pro Forma Adjusting Entries | Pro Forma Results |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash & cash equivalents | $ 79 | $ 61 | $ 8 | $ 83 | $ 11 | $ 7 | $ 1 | $ 250 | $ 16 | $ 11,476 4(i) | $ 11,742 |
| Accounts receivable and other assets, net | 24 | - | 5 | 5 | - | - | - | 34 | 16 | - | 50 |
| Deferred offering costs | - | - | - | - | - | - | - | - | 25 | - | 25 |
| Current assets | 103 | 61 | 13 | 88 | 11 | 7 | 1 | 284 | 57 | 11,476 | 11,817 |
| Property, plant and equipment, net | - | - | 5 | 23 | - | 4 | - | 32 | - | - | 32 |
| Intangible assets, net | - | - | - | - | - | - | - | - | - | 3,389 3,4(iv) | 3,389 |
| Goodwill | - | - | - | - | - | - | - | - | - | 2,596 2 | 2,596 |
| Total assets | 103 | 61 | 18 | 111 | 11 | 11 | 1 | 316 | 57 | 17,461 | 17,834 |
| Accounts payable and accrued expenses | 28 | 123 | 24 | 24 | 16 | 29 | 51 | 295 | 47 | (22) | 320 |
| Deferred revenue | - | - | - | - | 9 | - | - | 9 | - | - | 9 |
| 401K payable | - | - | - | 17 | - | - | - | 17 | - | - | 17 |
| Related party note payable - short term | - | - | 67 | - | - | - | - | 67 | 615 | (682) 4(ii, iii) | - |
| Total current liabilities | 28 | 123 | 91 | 41 | 25 | 29 | 51 | 388 | 662 | (704) | 346 |
| Contingent earnout | | | | | | | | | | 716 4(v) | 716 |
| Total liabilities | 28 | 123 | 91 | 41 | 25 | 29 | 51 | 388 | 662 | 12 | 1,062 |
| Stockholders' Equity | | | | | | | | | | | |
| Retained earnings /(deficit) | 75 | (62) | (73) | 70 | (14) | (18) | (50) | (72) | (610) | (1,977) | (2,659) |
| Common stock | | | | | | | | | 5 | 5 | 10 |
| Additional paid-in-capital | | | | | | | | | | 19,421 2,3,4(i-v) | 19,421 |

- 23 -

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total stockholders' equity | 75 | (62) | (73) | 70 | (14) | (18) | (50) | (72) | (605) | 17,449 | | 16,772 |
| Total Liabilities and Stockholders' Equity | $ 103 | $ 61 | $ 18 | $111 | $ 11 | $ 11 | $ 1 | $ 316 | $ 57 | $ 17,461 | | $ 17,834 |

73.     Furthermore, the Registration Statement provided condensed statements of operations for the three and six months ended June 30, 2016:

### ALLIANCE MMA, INC.
### CONDENSED STATEMENTS OF OPERATIONS
### (UNAUDITED)

| | FOR THE SIX MONTHS ENDED JUNE 30, | | FOR THE THREE MONTHS ENDED JUNE 30, | |
|---|---|---|---|---|
| | 2016 | 2015 | 2016 | 2015 |
| **OPERATING EXPENSES** | | | | |
| General and administrative expenses | $ 41,530 | $ 5,476 | $ 27,254 | $ 1,881 |
| Professional and consulting fees | 182,411 | 126,500 | 80,000 | 49,500 |
| **Total Operating Expenses** | (223,941) | (131,976) | 107,254 | 51,381 |
| | | | | |
| **NET INCOME LOSS** | $ (223,941) | $ (131,976) | $ (107,254) | $ (51,381) |

74.     The Registration Statement also provided statements of cash flows for the six months ended June 30, 2016:

### ALLIANCE MMA, INC.
### CONDENSED STATEMENTS OF CASH FLOWS
### (UNAUDITED)

| | FOR THE SIX MONTHS ENDED JUNE 30, | |
|---|---|---|
| | 2016 | 2015 |
| **CASH FLOWS FROM OPERATING ACTIVITIES** | | |
| Net loss | $ (223,941) | $ (131,976) |
| | | |
| **Adjustments to reconcile net loss to net cash provided by operating activities:** | | |
| | | |
| **Changes in assets and liabilities:** | | |
| Deposit media library | (15,500) | - |
| Accounts payable | (5,994) | 5,477 |
| | | |
| **Net cash used in operating activities** | (245,435) | (126,499) |

- 24 -

| | | |
|---|---|---|
| **CASH FLOWS FROM FINANCING ACTIVITIES** | | |
| Proceeds from notes payable | 261,701 | 121,210 |
| Proceeds from issuing founders shares | - | 5,289 |
| | | |
| **Net cash provided by financing activities** | 261,701 | 126,499 |
| | | |
| **INCREASE IN CASH** | 16,266 | - |
| | | |
| **CASH - BEGINNING OF PERIOD** | - | - |
| | | |
| **CASH - END OF PERIOD** | $ 16,266 | $ - |

*The Prospectus*

75.     On September 2, 2016, the Company filed the Prospectus, which contained substantially the same financial information presented in the Registration Statement.   The Prospectus also failed to disclose that the Company's condensed consolidated financial statements for the three and six months ended June 30, 2016 could not be relied upon because of an error in recognizing as compensation transfers of common stock by an affiliate of the Company to individuals who were at the time of transfer, or subsequently became, officers, directors or consultants of the Company.   Thus, the Prospectus provided Alliance's financial results in various financial statements with false and misleading figures for the three and six months ended June 30, 2016.

*November 14, 2016 Form 10-Q*

76.     On November 14, 2016, the Company filed a quarterly report for the fiscal quarter ended September 30, 2016 on Form 10-Q with the SEC (the "3Q 2016 10-Q"), signed by Defendants Danner and Price.   The 3Q 2016 10-Q failed to disclose that the Company's condensed consolidated financial statements for the nine months ended September 30, 2016 could not be relied upon because of an error in recognizing as compensation transfers of common stock by an

affiliate of the Company to individuals who were at the time of transfer, or subsequently became, officers, directors or consultants of the Company.  Thus, the 3Q 2016 10-Q provided Alliance's financial results in various financial statements with false and misleading figures for the three and nine months ended September 30, 2016

77.     The 3Q 2016 10-Q provided the following consolidated statements of operations for the three and nine months ended September 30, 2016:

### Alliance MMA, Inc.
### Condensed Consolidated Statements of Operations
### (*Unaudited*)

|  | Three Months Ended September 30, | | Nine Months Ended September 30, | For the period from February 12, 2015 (inception) through September 30, |
|  | 2016 | 2015 | 2016 | 2015 |
|---|---|---|---|---|
| Revenue, net | $ — | $ — | $ — | $ — |
| Cost of revenue | — | — | — | — |
| Gross profit | — | — | — | — |
| Operating expenses: |  |  |  |  |
| General and administrative | 357,826 | 19,984 | 399,356 | 25,460 |
| Professional and consulting fees | 237,585 | 56,500 | 419,996 | 183,000 |
| Total operating expenses | 595,411 | 76,484 | 819,352 | 208,460 |
| Loss from operations | (595,411) | (76,484) | (819,352) | (208,460) |
| Other expense | — | — | — | — |
| Loss before provision for income taxes | (595,411) | (76,484) | (819,352) | (208,460) |
| Provision for income taxes | — | — | — | — |
| Net loss | $ (595,411) | $ (76,484) | $ (819,352) | $ (208,460) |
| Net loss per share, basic and diluted | $ (0.11) | $ (0.01) | $ (0.15) | $ (0.04) |
| Weighted average shares used to compute net loss per share, basic and diluted | 5,289,882 | 5,289,136 | 5,289,221 | 5,289,136 |

78.     The 3Q 2016 10-Q additionally provided the following consolidated balance sheets as of September 30, 2016:

### Alliance MMA, Inc.
### Condensed Consolidated Balance Sheets

|  | September 30, 2016 | December 31, 2015 |
|---|---|---|
|  | (Unaudited) |  |
| **ASSETS** |  |  |
| Current assets: |  |  |
| Cash | $    5,122,876 | $          — |
| Accounts receivable, net of allowance for doubtful accounts of $0 as of September 30, 2016 and December 31, 2015 | 26,496 | — |
| Deferred offering costs | — | 25,000 |
| Prepaid expenses | 4,103 | — |
| Total current assets | 5,153,475 | 25,000 |
|  |  |  |
| Property and equipment, net | 23,661 | — |
| Intangible assets, net | 5,963,436 | — |
| Goodwill | 2,706,374 | — |
| TOTAL ASSETS | $  13,846,946 | $     25,000 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT)** |  |  |
| Current liabilities: |  |  |
| Accounts payable and accrued liabilities | $     250,162 | $     52,717 |
| Earn-out accrual | 716,394 | — |
| Payable for Target Assets - Louis Neglia | 129,500 | — |
| Note payable – related party | — | 353,450 |
| Total current liabilities | 1,096,056 | 406,167 |
|  |  |  |
| TOTAL LIABILITIES |  |  |
| *Commitments and contingencies (Note 8)* |  |  |
| Stockholders' Equity (Deficit): |  |  |
| Preferred Stock, $.001 par value; 5,000,000 shares authorized at September 30, 2016 and December 31, 2015; nil shares issued and outstanding | — | — |
| Common stock, $.001 par value; 45,000,000 shares authorized at September 30, 2016 and December 31, 2015; 8,479,892 and 5,289,136 shares issued and outstanding, respectively | 8,480 | 5,289 |
| Additional paid-in capital | 13,948,218 | — |
| Accumulated deficit | (1,205,808) | (386,456) |
| TOTAL STOCKHOLDERS' EQUITY (DEFICIT) | 12,750,890 | (381,167) |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT) | $  13,846,946 | $     25,000 |

79.     The 3Q 2016 10-Q also provided the following consolidated statements of stockholders' equity:

**Alliance MMA, Inc.**

**Condensed Consolidated Statements of Stockholders' Equity (Deficit) From February 12, 2015 (Inception) through September 30, 2016**

***(Unaudited)***

|  | Common Stock | Additional Paid-in | Accumulated | Total Stockholders' |
|---|---|---|---|---|

| | Shares | Amount | Capital | Deficit | Equity (Deficit) |
|---|---|---|---|---|---|
| Balance—February 12, 2015 (Inception) | — | $ — | $ — | $ — | $ — |
| Issuance of common stock to founders | 5,289,136 | 5,289 | — | — | 5,289 |
| Net loss | — | — | — | (386,456) | (386,456) |
| Balance—December 31, 2015 | 5,289,136 | 5,289 | — | (386,456) | (381,167) |
| Issuance of common stock related to IPO | 1,813,225 | 1,813 | 7,730,467 | — | 7,732,280 |
| Issuance of common stock related to acquisition of Target Companies and Target Assets | 1,377,531 | 1,378 | 6,197,511 | — | 6,198,889 |
| Stock based compensation | — | — | 20,240 | — | 20,240 |
| Net loss | — | — | — | (819,352) | (819,352) |
| Balance—September 30, 2016 | 8,479,892 | $ 8,480 | $13,948,218 | $ (1,205,808) | $ 12,750,890 |

80.    The 3Q 2016 10-Q additionally provided a consolidated statements of cash flows

for the nine months ended September 30, 2016:

## Alliance MMA, Inc.
## Condensed Consolidated Statements of Cash Flows
### (*Unaudited*)

| | Nine Months Ended September 30, 2016 | From February 12, 2015 (Inception) through September 30, 2015 |
|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES: | | |
| Net loss | $ (819,352) | $ (208,460) |
| Adjustments to reconcile net loss to net cash used in operating activities: | | |
| Stock-based compensation | 20,240 | — |
| Changes in operating assets and liabilities: | | |
| Deferred offering cost | 25,000 | — |
| Accounts payable and accrued liabilities | (90,106) | 7,260 |
| Net cash used in operating activities | (864,218) | (201,200) |
| CASH FLOWS FROM INVESTING ACTIVITIES: | | |
| Purchase of Target Companies and Target Assets, net | (1,391,736) | — |
| Net cash used in investing activities | (1,391,736) | — |
| CASH FLOWS FROM FINANCING ACTIVITIES: | | |
| Proceeds from note payable – related party | $ 523,550 | $ 195,911 |
| Repayments of note payable – related party | (877,000) | — |
| Net proceeds from IPO | 7,732,280 | — |
| Proceeds from issuance of common stock to founders | — | 5,289 |
| Net cash provided by financing activities | 7,378,830 | 201,200 |
| NET INCREASE IN CASH | 5,122,876 | — |
| CASH — BEGINNING OF PERIOD | — | — |
| CASH — END OF PERIOD | $ 5,122,876 | $ — |

- 28 -

| SUPPLEMENTAL DISCLOSURE OF CASH FLOW INFORMATION: | | |
|---|---|---|
| Cash paid for interest | $ 34,015 | $ — |
| Cash paid for taxes | $ — | $ — |
| SUPPLEMENTAL DISCLOSURE OF NON-CASH INVESTING AND FINANCING ACTIVITIES: | | |
| Stock issued in conjunction with Target Company and Target Asset acquisitions | $ 6,198,889 | $ — |

81.    Attached to the 3Q 2016 10-Q were certifications pursuant to Rule 13a-14(a) and 15d-14(a) of the Securities Exchange Act of 1934, Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX"), and 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the SOX, signed by Defendants Danner and Price, attesting to the accuracy of the 3Q 2016 10-Q.

**The Truth Emerges**

***April 12, 2017 Form 8-K***

82.    On April 12, 2017, Alliance filed a current report on Form 8-K with the SEC, which revealed that its previously issued consolidated financial statements for the nine months ended September 30, 2016 and the three and six months ended June 30, 2016 should no longer be relied upon and would be restated.  It stated, in relevant part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

*On April 7, 2017, the Board of Directors of Alliance MMA, Inc. (the "Company") concluded that the condensed consolidated financial statements for the nine months ended September 30, 2016 included in the Company's Form 10-Q for the quarter ended September 30, 2016 and for the three and six months ended June 30, 2016 should no longer be relied upon because of an error in recognizing as compensation transfers of common stock by an affiliate of the Company to individuals who were at the time of transfer, or subsequently became, officers, directors or consultants of the Company.* The Company plans to include in its annual report on Form 10-K for the year ended December 31, 2016 revised financial information for the nine months ended September 30, 2016 and for the three and six months ended June 30, 2016. The Company's chief financial officer has discussed the determination to restate these financial statements with its independent accounting firm.

- 29 -

(Emphasis added in italics.)

83.     On this news, the price per share of Alliance stock fell $0.31, or 12.1%, from its previous day closing price to close at $2.24 on April 13, 2017.

### April 17, 2017 Form 10-K

84.     On April 17, 2017, the Company filed an annual report for the fiscal quarter and year ended December 31, 2016 on Form 10-K with the SEC (the "2016 10-K"), providing its restated financial results for the nine months ended September 30, 2016 and for the three and six months ended June 30, 2016.  Notably, the 2016 10-K revealed that the Company had incurred a net loss of $2,595,000 for the nine months ended September 30, 2016 "related to non-cash compensation in the form of shares of [the Company's] common stock . . . ."  The Company's previously filed financial reports had incorrectly reported a net loss of $819,352 for the nine months ended September 30, 2016.

85.     On this news, the price per share of Alliance stock fell $0.13, or 6.0%, from its previous day closing price to close at $2.03 on August 18, 2017.

### April 18, 2017 Press Release

86.     On April 18, 2017, the Company issued a press release announcing the filing of the 2016 10-K the previous day.  The press release commented on the restated net loss figure disclosed in the 2016 10-K, stating, in relevant part, "the stock-based compensation charge of $2.6 million represents approximately 62.4% of our annual loss for 2016 . . . ."

87.     Upon the investing public becoming further aware of the restatements, the price per share of Company stock fell a further $0.22, or 10.8%, from the previous day's closing price to close at $1.81 on April 19, 2017.

88.     The statements referenced in ¶¶ 70-81 above were materially false and misleading because they misrepresented and failed to disclose material adverse facts pertaining to the Company's business, operations, prospects, and legal compliance, which were known to the Individual Defendants or recklessly disregarded by them.  Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose that the Company's condensed consolidated financial statements published for the nine months ended September 30, 2016 and the three and six months ended June 30, 2016 could not be relied upon because of an error in recognizing as compensation transfers of common stock by an affiliate of the Company to individuals who were at the time of transfer, or subsequently became, officers, directors or consultants of the Company.  As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

89.     The Individual Defendants breached their fiduciary duties by making and/or causing the Company to make the foregoing material misrepresentations and omissions. Moreover, the Individual Defendants failed to correct and/or caused the Company to fail to correct these false and/or misleading statements and/or omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.  Additionally, in breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

## DAMAGES TO ALLIANCE

90.     As a direct and proximate result of the Individual Defendants' conduct, Alliance will lose and expend many millions of dollars.

91.     Such expenditures include, but are not limited to, legal fees associated with the Securities Fraud Class Action filed against the Company and Defendants Danner and Price and amounts paid to outside lawyers, accountants, and investigators in connection to the Securities Fraud Class Action.

92.     Such costs include, but are not limited to, compensation, bonuses, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

93.     Such losses also include losses of revenues caused by customers' loss of trust in the Company's business and products.

94.     As a direct and proximate result of the Individual Defendants' conduct, Alliance has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

95.     Plaintiff brings this action derivatively and for the benefit of Alliance to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Alliance and unjust enrichment, as well as the aiding and abetting thereof.

96.     Alliance is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

97.     Plaintiff is, and at all relevant times has been, an Alliance shareholder.  Plaintiff will adequately and fairly represent the interests of Alliance in enforcing and prosecuting its rights,

and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

98.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

99.    A pre-suit demand on the Board of Alliance is futile and, therefore, excused.  At the time of filing of this action, the Board consists of the following six Individual Defendants: Defendants Danner, Gamberale, Gracie, Shefts, Tracy, and Watson (collectively, the "Directors"). Plaintiff only needs to allege demand futility as to three of the six Directors who are on the Board at the time this action is commenced.

100.    Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their scheme and the false and misleading statements and omissions of material facts described herein, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

101.    In complete abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein.  The fraudulent scheme was intended to make the Company appear more stable, profitable, and attractive to investors.  As a result of the foregoing, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

- 33 -

102.     Furthermore, demand in this case is excused because the Directors, who are named as defendants in this action, control the Company and are beholden to each other.  Thus, each member of the Board is not disinterested or independent, faces a substantial likelihood of liability, and, therefore, demand on each Director would have been futile and is excused.

103.     Additional reasons that demand on Defendant Danner is futile follow.  Defendant Danner has served as the Company's CEO and as Chairman of the Board since May 2016.  Thus, as the Company admits, Danner is a non-independent director.  Defendant Danner was ultimately responsible for all of the false and misleading statements and omissions that were made (he signed the Registration Statement and the 3Q 2016 10-Q).  He received lavish compensation, including $566,506 in 2016.  Defendant Danner's large Company stock holding, worth over $385,500 on April 10, 2017, reveals his interest in keeping the Company's stock price as high as possible.  Moreover, Defendant Danner is a defendant in the Securities Fraud Class Action.  As CEO and Chairman of the Board, Defendant Danner conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and/or omissions of material fact, consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  For these reasons, too, Defendant Danner breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

104.     Additional reasons that demand on Defendant Gamberale is futile follow.  Defendant Gamberale has served as a Company director since February 2015.  He also serves as the chairman of the Compensation Committee, a member of the Audit Committee, and a member of the Nominating Committee.  Defendant Gamberale's large Company stock holding, worth over

$1.5 million on April 10, 2017, reveals his interest in keeping the Company's stock price as high as possible.  As a long-time director and the chairman of the Compensation Committee, member of the Audit Committee, and member of the Nominating Committee, Defendant Gamberale conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and/or omissions of material fact (he signed the Registration Statement), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  For these reasons, too, Defendant Gamberale breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

105.    Additional reasons that demand on Defendant Gracie is futile follow.  Defendant Gracie has served as a Company director since September 2016.  He received lavish compensation, including $286,667 in 2016.  Defendant Gracie's large Company stock holding, worth over $171,334 on April 10, 2017, reveals his interest in keeping the Company's stock price as high as possible.  As a Company director, Defendant Gracie conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and/or omissions of material fact, consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  For these reasons, too, Defendant Gracie breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

106.    Additional reasons that demand on Defendant Shefts is futile follow.  Defendant Shefts has served as a Company director since September 2016.  He also serves as the chairman of the Audit Committee and as a member of the Compensation Committee.  He received lavish

compensation, including $108,888 in 2016.  Defendant Shefts' large Company stock holding, worth over $489,011 on April 10, 2017, reveals his interest in keeping the Company's stock price as high as possible.  As the chairman of the Audit Committee and member of the Compensation Committee, Defendant Shefts conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and/or omissions of material fact, consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  For these reasons, too, Defendant Shefts breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

107.    Additional reasons that demand on Defendant Tracy is futile follow.  Defendant Tracy has served as a Company director since September 2016.  He also serves as a member of the Audit Committee and as a member of the Nominating Committee.  Defendant Tracy's large Company stock holding, worth over $320,484 on April 10, 2017, reveals his interest in keeping the Company's stock price as high as possible.  As a member of the Audit Committee and the Nominating Committee, Defendant Tracy conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and/or omissions of material fact, consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  For these reasons, too, Defendant Tracy breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

108.    Additional reasons that demand on Defendant Watson is futile follow.  Defendant Watson has served as a Company director since September 2016.  Defendant Watson's large

Company stock holding, worth over $42,834 on April 10, 2017, reveals his interest in keeping the Company's stock price as high as possible. As a Company director, Defendant Watson conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and/or omissions of material fact, consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Watson breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

109.    Additional reasons that demand on the Board is futile follow.

110.    At least four out of the six Directors acted intentionally or recklessly in the accounting fraud described herein. The Audit Committee's principal duties are to oversee the Company's financial statements, disclosure practices, accounting policies, procedures, and internal controls. The CEO of the Company has the same, if not more, responsibilities with respect to the Company's financial statements, disclosure practices, accounting policies, procedures and internal controls. Indeed, the CEO certified the 3Q 2016 10-Q and attested to the accuracy of the statements made therein. Thus, Defendant Danner as CEO and Defendants Shefts, Tracy, and Gamberale as members of the Audit Committee knew, or should have known, of the Company's false and misleading financial reports. At least these Directors' actions and failure to act have made them highly likely to be personally liable. Therefore, demand upon them is futile.

111.    The Directors, as members of the Board, were and are subject to the Code of Ethics. The Code of Ethics goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations. The Code of Ethics requires the Directors to also adhere to Alliance's standards

of business conduct. The Directors violated the Code of Ethics because they knowingly or recklessly engaged in and facilitated the misconduct alleged herein and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Directors violated the Code of Ethics, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

112.    Furthermore, demand in this case is excused because the Directors, who are named as defendants in this action, control the Company and are beholden to each other.

113.    The Directors have longstanding business and personal relationships with each other and the Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders. These conflicts of interest precluded the Directors from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Directors would be futile.

114.    Each of the Directors is liable for engagement in the scheme to make false and misleading statements and/or omissions of material fact, consciously disregarding their duties to monitor engagement in the scheme, and consciously disregarding their duties to protect corporate assets. Thus, each of the Directors faces a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

115.    Alliance has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Alliance any part of the damages Alliance suffered, and will continue to suffer, thereby. Thus, any demand on the Directors would be futile.

116.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct.  Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists).  As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company.  Accordingly, demand is excused as being futile.

117.    The acts complained of herein constitute violations of fiduciary duties owed by Alliance's officers and directors, and these acts are incapable of ratification.

118.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Alliance.  If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion."  As a result, if the Directors were to sue themselves or certain of the officers of Alliance, there would be no directors' and officers' insurance protection.  Accordingly, the Directors cannot be expected to bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery.  Thus, demand on the Directors is futile and, therefore, excused.

119.    If there is no directors' and officers' liability insurance, then the Directors will not cause Alliance to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability.  Accordingly, demand is futile in that event, as well.

120.    Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least three of them, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

### Against the Individual Defendants for Breach of Fiduciary Duties

121.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

122.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Alliance's business and affairs.

123.    Each of the Individual Defendants violated and breached his fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

124.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Alliance.

125.    In breach of their fiduciary duties owed to Alliance, the Individual Defendants willfully or recklessly caused the Company to issue false and misleading statements and/or omit material facts to the detriment of the shareholders and the Company.  Moreover, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or

misleading statements and/or omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

126.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct those public statements and representations.   The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Alliance's securities.

127.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls.   The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them.   Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Alliance's securities.

128.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

129.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Alliance has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

130.    Plaintiff on behalf of Alliance has no adequate remedy at law.

**SECOND CLAIM**

**Against Individual Defendants for Unjust Enrichment**

131.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

132.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Alliance.

133.    The Individual Defendants either benefitted financially from the improper conduct and received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from Alliance that was tied to the performance or artificially inflated valuation of Alliance, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

134.    Plaintiff, as a shareholder and a representative of Alliance, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits -- including from benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

135.    Plaintiff on behalf of Alliance has no adequate remedy at law.

## THIRD CLAIM

### Against Individual Defendants for Abuse of Control

136.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

137.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Alliance, for which they are legally responsible.

138.     As a direct and proximate result of the Individual Defendants' abuse of control, Alliance has sustained significant damages.  As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Alliance has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

139.     Plaintiff on behalf of Alliance has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Gross Mismanagement

140.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

141.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Alliance in a manner consistent with the operations of a publicly-held corporation.

142. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Alliance has sustained and will continue to sustain significant damages.

143. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

144. Plaintiff, on behalf of Alliance, has no adequate remedy at law.

## FIFTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

145. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

146. The Individual Defendants caused the Company to pay themselves excessive salaries, bonuses, fees, and stock grants to the detriment of the shareholders and the Company.

147. As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Alliance to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to likely engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

148. As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

149. Plaintiff on behalf of Alliance has no adequate remedy at law.

**REQUEST FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of Alliance, and that Plaintiff is an adequate representative of the Company;

(b)     Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Alliance;

(c)     Determining and awarding to Alliance the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)     Directing Alliance and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Alliance and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Alliance to nominate at least three candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance

with applicable laws, rules, and regulations.

(e)      Awarding Alliance restitution from Individual Defendants, and each of them;

(f)      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)      Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: October 11, 2017                    Respectfully submitted,

**PAWAR LAW GROUP P.C.**


<u>/s/ Vikrant Pawar</u>
Vik Pawar, Esq.
6 South Street, Suite 201
Morristown, New Jersey 07960
Telephone: (212) 571-0805
Facsimile: (212) 571-0938
Email: vikrantpawaresq@gmail.com

**THE BROWN LAW FIRM, P.C.**
Timothy W. Brown
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff*